**AUTOMATIC RETAILERS OF AMERICA, INC., (COFFEE TIME DIV.), a Corporation, Automagic Vendors, Inc., (formerly *Automatique St. Louis, Inc.*), a Corporation, Automatic Canteen Company of America, a Corporation, Apex Sales Company, a Corporation, Coca Cola Bottling Company of St. Louis, a Corporation, Service Vending Co., Inc., a Corporation, doing business as Midwest Vending, and Spot Sales, Inc., a Corporation, Respondents,**

v.

**M. E. MORRIS, Director of Revenue, State of Missouri, Appellant.**

No. 51033.

Supreme Court of Missouri,

En Banc.

Feb. 23, 1965.

Armstrong, Teasdale, Roos, Kramer & Vaughan, Kenneth Teasdale, Bruce E. Woodruff, Kappel & Neill, Richard Wolff, St. Louis, for respondents.

Thomas F. Eagleton, Atty. Gen., Eugene G. Bushmann, Asst. Atty. Gen., Jefferson City, for appellant.

Sam Levin, Irving M. Malnik, St. Louis, for amicus curiae.

EAGER, Chief Justice.

This is a suit for a declaratory judgment involving the construction of our Sales Tax Law, §§ 144.010–144.430, as amended by Laws 1963, pages 195–199. The respondents (plaintiffs) are owners and operators of coin-operated vending machines, and all are Missouri corporations. Basically, the controversy is whether they must pay sales taxes of 3% on the full gross receipts of their operations, or whether they may eliminate the tax on all sales transactions of less than 25 cents. The trial court found for plaintiffs in all respects and enjoined the defendant from collecting the additional sums he claimed. Up to that time plaintiffs had paid under protest the tax on sales of less than 25 cents.

Three of the present plaintiffs had also paid such taxes under protest under the law as it existed in 1961 and, after an adverse administrative ruling, they had separately sought reviews in the Circuit Court of Cole County. That Court reversed the decisions of the Director of Revenue on January 28, 1963, holding that the petitioners were not required to collect or pay any sales tax on transactions of less than 25 cents, and ordering refunds. The judgments were appealed and the causes consolidated here on appeal. Division One of this Court rendered an opinion affirming the Circuit Court (except as to costs) on July 13, 1964, but thereafter the consolidated cases were transferred to the Court in Banc. The opinion of Division One is adopted as the opinion of the Court in Banc concurrently with the filing of the present opinion, and it will occasionally be referred to herein as the prior opinion, 386 S.W.2d 897.

From the inception of our sales tax law until 1961 Missouri had operated, or had at least purported to operate, under a token or mill system in order to facilitate the collection of the 2% sales tax on small sales (less than 50 cents) and intermediate sales (between 50 cents and $1.00). In 1961 the legislature, for the first time, adopted a bracket system of collection, thus replacing the old token system; in 1963, concurrently with a raise in the tax rate to 3%, the legislature enacted a new bracket system.

We quote the pertinent portions of the respective bracket sections, 1961 and 1963, in that order:

"144.285. Brackets for collection of tax. —1. Notwithstanding the rate of taxes imposed by this chapter, and in order to avoid fractions of pennies, the following brackets shall be applicable to all two per cent taxable transactions: (1) On sales of less than twenty-five cents no tax shall be added; (2) On sales in amounts from twenty-five cents up to and including seventy-four cents, one cent shall be added for taxes; * * * 2. No vendor or seller shall knowingly charge or receive from a purchaser as a sales tax any sum in excess of the sums prescribed in subdivisions (1) to (4)."

"144.285. Brackets for collection of tax. —1. In order to permit sellers required to collect and report the sales tax to collect the amount required to be reported and remitted, but not to change the requirements of reporting or remitting tax or to serve as a levy of the tax, and in order to avoid fractions of pennies, the following brackets shall be applicable to all taxable transactions: (1) On sales of less than twenty-five cents no tax shall be added; (2) On sales in amounts from twenty-five cents up to and including fifty cents, one cent shall be added for taxes; * * * 2. No vendor or seller shall knowingly charge or receive from a purchaser as a sales tax any sum in excess of the sums prescribed in subdivisions (1) to (5)." We have already held in our prior opinion that under the 1961 law, no tax need be collected or remitted by the seller on transactions of less than 25 cents. The only question really remaining is whether the

1963 amendments, considered with the act as a whole, indicate a contrary legislative intent. The legislature remained in session for several months after the decision of the Circuit Court in the prior cases.

At this point we must note various provisions of other sections of the act which we deem pertinent, as follows: Section 144.020: "* * * there shall be and is hereby levied and imposed and shall be collected and paid: (1) Upon every retail sale in this state of tangible personal property a tax equivalent to three per cent of the purchase price paid or charged, * * *."

"144.060. Purchaser to pay sales tax—penalty for refusal It shall be the duty of every person making any purchase or receiving any service upon which a tax is imposed by this chapter to pay the amount of such tax to the person making such sale or rendering such service; * * *."

"144.080. Seller responsible for tax—reports—tax upon sale—penalty 1. Every person receiving any payment or consideration upon the sale of property or rendering of service subject to the tax imposed by the provisions of this chapter, or required to make collection of the tax imposed by the provisions of this chapter, shall be responsible not only for the collection of the amount of the tax imposed on said sale or service, but shall, on or before the fifteenth day of the month following each calendar quarterly period of three months, make a return to the director of revenue of all taxes collected for the preceding quarter, or required to be collected for the preceding quarter, *and shall remit the taxes so collected or required to be collected* to the director of revenue. 2. The seller of any property or person rendering any service, subject to the tax imposed by this chapter, is directed to collect the tax from the purchaser of such property or the recipient of the service as the case may be. 3. The tax imposed by this chapter is a tax upon the sale, service or transaction and shall be collected by the person making the sale * *." (Italics ours.)

"144.100 Returns filed with director—charge and time sales—correction of errors 1. Every person making or rendering any sales, service or transaction taxable under sections 144.010 to 144.510, except transactions provided for in section 144.070, individually or by duly authorized officer or agent, shall, on blanks designed and furnished by the director of revenue, make and file a written return with the director of revenue in the manner that he prescribes and at the times provided in sections 144.080 and 144.090, respectively. 2. The returns shall show the amount of gross receipts from sales, services and taxable transactions by the person and the amount due thereon during and for the period covered by the return and with the return the person shall remit to the director of revenue the amount of the tax due, including any and all moneys collected from a purchaser as sales tax."

■ It is thus seen, and we so hold, that our sales tax is a transaction tax imposed upon the purchaser of tangible personal property. It is levied "upon every retail sale"; the duty to pay is upon "every person making any purchase * * * upon which a tax is imposed," and the seller shall make a return and "shall remit the taxes *so collected or required to be collected* * * *." We may note here that our first sales tax was expressly enacted as a gross receipts tax imposed for the privilege of engaging in the business of retail sales. Laws 1933–1934, Extra Session, p. 155 et seq. This law was repealed in 1935 and replaced by a tax "upon every retail sale of tangible personal property * * *." Laws 1935, p. 411 et seq. It is significant to note that Missouri, after a trial of approximately one year, thus abandoned the idea of a privilege tax on gross receipts; it is also significant that the requirement on the seller to collect and remit was expressed in 1935 in almost the same language as it is expressed today, i. e., "* * * and shall remit the taxes so collected or required to be collected to the State Auditor." Laws 1935, p. 417, Section 5. The substantive law has

remained the same until the institution of the bracket system in 1961.

In view of our concurrent opinion in the prior cases, the narrow question remaining is whether or not the change in § 144.285 made in 1963 (as quoted), when considered with the remainder of the law, requires those who sell goods at less than 25 cents to remit a 3% tax on the receipts from such sales. As already indicated, the trial court found and concluded: that the law as amended imposed a transaction tax, and that the primary duty to pay it was upon the purchaser; that the law did not levy a tax upon a seller's gross receipts; that the duty of the seller was to remit the tax collected or required to be collected; that on sales of less than 25 cents there was no tax due, and the seller was neither required to collect nor remit any tax thereon. The Court enjoined the defendant from requiring plaintiffs to pay on any different basis. We sustained a motion requesting that this cause be heard by the Court in Banc, and we heard arguments concurrently with those in the prior cases.

The evidence showed that all of the plaintiffs (except Coca Cola) operated vending machines which dispensed articles at values both lesser and greater than 25 cents, in fact, from 5 cents to more than 50 cents; most of them operated single machines which dispensed items with values both above and below that figure. Representatives of the various plaintiffs testified to the percentages of their respective sales (for a given quarter or two quarters) which involved transactions of less than 25 cents; these figures varied from 100% in the case of Coca Cola Bottling Company, down to 35% for Apex Sales Company; the majority was from 51.1% to 78%. The evidence further showed: that it was impossible to purchase more than one item at a time from any machine, and that when any one item had been selected and delivered, it was impossible to return it; that no vending machine has been devised which is able to collect the sales tax. It was admitted that there is no way to tell whether one purchaser buys more than one item on the same occasion by successive transactions. The methods of computing the percentage of sales (or sales volume) under 25 cents varied somewhat; on machines which sold only items for 25 cents or more all receipts were accounted for; on machines selling only for less than 25 cents the tax was paid under protest; on machines handling both types of sales, computations were made of the inventories consumed on each type of product, and records kept of the collections from each machine; one or more plaintiffs apparently used repeated spot checks of the different inventories and collections in order to arrive at the percentage of sales under 25 cents. Some of the plaintiffs also operated cafeterias in which items were manually selected and a tax collected in the aggregate on the customer's tray. That matter is not really involved here.

The State argues: that the tax is imposed at 3% on all retail sales, and that subparagraph 1(1) of the bracket section does not grant an exemption on sales under 25 cents; that the bracket system was adopted merely to permit an averaging in the collection and remittance of the tax and to help alleviate an "insoluble" problem in collection; that the intent of the act is to require the seller to remit 3% on his total gross receipts and to permit a reimbursement, as near as may be, through the averaging process of the bracket system; that the seller's remittance is *not* to be limited to what he is able to collect, and that these plaintiffs are not entitled to any preferential treatment because they may have chosen a business involving so large a percentage of small sales; that the inability to collect the tax on sales under 25 cents should not and does not create an exemption; that plaintiffs have not borne the burden of showing accurately the number of sales each has made under 25 cents in each respective period; and, finally, that, as construed by the trial court, the act would be rendered unconstitutional as an arbitrary classification, because it would grant a "meaning-

less exemption," and place varying rates upon different "individuals" (presumably purchasers). We note that in the prior cases the State stipulated as to the correctness of the dollar volume of transactions which each of the plaintiffs claimed represented its sales transactions under 25 cents.

The State relies upon the same cases which it urged in the prior cases. Despite our previous consideration of those cases, we have reconsidered all of them here. Those which directly involve sales taxes are based upon statutes materially different from ours. The case of Calvert v. Canteen Company, Tex.Sup., 371 S.W.2d 556, was discussed at length and expressly distinguished in our prior opinion. Some of the others involve statutes which expressly imposed levies upon gross receipts with the seller made responsible for the full remittance (White v. State of Washington, 49 Wash.2d 716, 306 P.2d 230; F. W. Woolworth Company v. Gray, 77 N.D. 757, 46 N.W.2d 295); others were specifically held to be imposed as privilege taxes upon the seller for the right to engage in the business of retail sales. (Piedmont Canteen Service, Inc. v. Johnson, Com. of Revenue, 256 N.C. 155, 123 S.E.2d 582, 91 A.L.R.2d 1127; State v. Woods, 242 Ala. 184, 5 So.2d 732; Stevens Enterprises, Inc. v. State Comm. of Revenue, 179 Kan. 696, 298 P.2d 326; W.S. Libbey Company v. Johnson, 148 Me. 410, 94 A.2d 907; Smoky Mountain Canteen Company v. Kizer, 193 Tenn. 598, 247 S.W.2d 69; Roth Drugs, Inc. v. Johnson, 13 Cal. App.2d 720, 57 P.2d 1022.) It is difficult for us to understand why the State cites such cases, except, perhaps, for the generalized discussions in some concerning the "averaging" of the impact of the tax by the use of a bracket system. None of the cases cited are persuasive in the present situation, and we return to an analysis of our own act, keeping in mind that we have concurrently held that, under the 1961 law, the seller need pay no tax on sales transactions of less than 25 cents.

No substantive change has since been made in any respect material here, except in the preamble of the bracket Section, 144.-285. The imposition (§ 144.020) is "Upon every retail sale in this state of tangible personal property * * *"; it is made the duty of the purchaser to "pay the amount of such tax * * *" (§ 144.060); the seller shall make returns (§ 144.080) of all taxes collected "or required to be collected" and shall remit "the taxes so collected or required to be collected * * *"; the seller (§ 144.080) "* * * of any property * * subject to the tax imposed by sections 144.010 to 144.510, [which is for our purposes the whole of the chapter applicable to sales taxes] is directed to collect the tax from the purchaser * * *"; also, "The tax imposed by sections 144.010 to 144.510 is a tax upon the sale, service or transaction * * *"; Section 144.100 (unchanged) requires every seller subject to the tax to file written returns in which he shall "show the amount of gross receipts from sales, services and taxable transactions * * * and the amount due thereon * * and * * * remit * * * the amount of the tax due, including any and all moneys collected from a purchaser as sales tax." We especially note: that the seller is required to remit the taxes "collected or required to be collected"; that he is forbidden by § 144.285(2) from receiving as a tax any sum in excess of that permitted in the stated brackets; and that no tax whatever is imposed upon the seller by any provision of the act.

For clarity, we repeat here the preambles to the respective bracket Sections, 144.285: (1961) "Brackets for collection of tax. —1. Notwithstanding the rate of taxes imposed by this chapter, and in order to avoid fractions of pennies, the following brackets shall be applicable to all two per cent taxable transactions: * * *." (1963) "Brackets for collection of tax.—1. In order to permit sellers required to collect and report the sales tax to collect the amount required to be reported and remitted, but not to change the requirements of reporting

or remitting tax or to serve as a levy of the tax, and in order to avoid fractions of pennies, the following brackets shall be applicable to all taxable transactions; * * *."

The 1963 section thus expresses the intent to permit sellers to collect the amount of tax required to be reported and *remitted,* but without changing the previous requirements of reporting and remitting. As we read the act, in general and specifically, sellers are only required to remit the *taxes collected or required to be collected.* The present bracket section (as did the 1961 section) expressly provides that *"no tax shall be added"* on sales of less than 25 cents; the section is made applicable *"to all taxable transactions."* We hold that this section (as we have likewise held regarding the 1961 section) did and does modify § 144.020 to the extent that it exempts sales of less than 25 cents from the tax. In view of the substantive wording and effect of the various sections, we hold that the omission of the words of the 1961 preamble, "Notwithstanding the rate of taxes imposed by this chapter * * *," is not decisive; the same result follows from our construction of the act as a whole without that wording. If the legislature intended by the 1963 Amendment to impose a tax of 3% on the full gross receipts of a seller, it has failed to do so by any reasonable construction of the wording used. In passing, we note again that Missouri started with a gross receipts tax, but abandoned it almost immediately.

The State complains bitterly about the supposed impossibility in the collection of such taxes from the plaintiffs except upon a gross receipts basis. The Sales Tax Supervisor seems to have admitted on the stand that such collection, though difficult, would not be impossible. However, this Court is merely deciding the legal issue involved and, while we are not unconcerned with the administration of the law, our decision may not be controlled by the supposed difficulties inherent in it. The evidence here indicates that these plaintiffs, and presumably all others in a like situation, can, by careful analysis and supervision, separate and classify their sales volumes so that a tax may be fairly and accurately paid. Such practices will continue to be subject to the scrutiny of the State, and we feel confident that it will exercise such supervision as will assure it of receiving tax payments in compliance with this opinion. We need not be concerned with the possible number of different purchases made by one purchaser on one occasion, for we are convinced that each purchase from a vending machine constitutes a separate transaction.

The argument made in passing that, as so construed, the bracket system would be unconstitutional, requires little discussion. This suggestion, renewed by reference to the State's brief in the prior cases, is apparently based upon the claim that the act would thus establish an arbitrary classification and fix varying rates upon different individuals. The cited cases do not establish any such proposition. The tax discussed in Stewart Dry Goods Company v. Lewis, 294 U.S. 550, 55 S.Ct. 525, 79 L.Ed. 1054 was a gross sales tax imposed upon merchants for the privilege of doing business, but upon a clearly discriminatory basis. If our legislature chooses to start the imposition of its sales tax at 25 cents, both as to the functions of purchasers and sellers, it is well within the bounds of its discretion to do so. There is no arbitrary classification, for all in the same situation are treated alike. The Court is making no distinction here in favor of vending machine operators, for it is dealing with all retail sales transactions of less than 25 cents.

Lastly, the State argues at some length that the trial court exceeded its allotted discretion, if not indeed its jurisdiction, in enjoining defendant from the collection of the taxes which it claims are due. It will be wholly unnecessary to go into this question. We have held here that the State had and has no right to collect those taxes which the Court enjoined it

from collecting. Under these circumstances, any possible excess of authority on the part of the trial court has become moot.

■ This opinion is being filed as soon as reasonably possible after the argument of the case in this Court in order to give the legislature an opportunity to take further action, if it so desires, at the current session. We note that the costs were not adjudged against the State, as indeed they should not have been.

The judgment is affirmed.

STORCKMAN, HYDE, HOLMAN, HENLEY and FINCH, JJ., and STONE, Special Judge, concur.

DALTON, J., not sitting.